IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Henry A. Barnett,  )  | |
| ) | C/A No.: 4:07-1730-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Michael J. Astrue, Commissioner of ) | **O R D E R** |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act (the "Act"), codified as amended at 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner").

I. PROCEDURAL HISTORY

Plaintiff Henry A. Barnett filed an application for a Disability Insurance Benefit ("DIB") on January 26, 2005, alleging disability since April 28, 2003 stemming from a back injury. His application was denied initially and upon reconsideration. Plaintiff requested and received a hearing before an administrative law judge ("ALJ"). Citing an inability to make a fully favorable determination on the basis of the written record, a hearing in which Plaintiff was able to testify took place before the ALJ on September 12, 2006. On January 26, 2007, the ALJ issued a decision denying Plaintiff's claims for benefits. Plaintiff filed a Request for Review of the ALJ's decision, which was denied by the Appeals Council on May 31, 2007. Thus, the decision of the ALJ became the "final decision" of the Commissioner for the purposes of judicial review. Plaintiff thereafter brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the "final decision"

of the Commissioner.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Thomas E. Rogers, III for a Report and Recommendation. On July 22, 2008, the Magistrate Judge filed a Report and Recommendation in which he recommended that the Commissioner's decision to deny benefits be affirmed. Plaintiff filed objections to the Report and Recommendation on July 31, 2008. The Commissioner filed a response to Plaintiff's objections on August 13, 2008.

This matter now is before the court for review of the Magistrate Judge's Report and Recommendation. The court is charged with making a *de novo* determination of any portions of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b).

## II.  STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow,

however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). However, the Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### III.  FACTS

The facts are set out in detail in the Report and Recommendation. Briefly, Plaintiff was born on January 9, 1959. Tr. 47. He has a high school education with two years of technical college and has vocational training as a firefighter, emergency medical technician, police officer, and plumber. Tr. 375, 380.

Plaintiff injured his back on April 26, 2003, in a workplace accident while he was serving as a police officer for Anderson County, South Carolina. Initial treatment of the injury came from Dr. Kyle, who prescribed oral steroids and ordered a lumbar MRI scan. Tr. 295. The scan, taken on May 22, 2003, Tr. 211-12, showed a disc bulging at L4-5, disc protrusions at L3-4 and L5-S1, spinal stenosis at L3-4 and L4-5, and degenerative changes in the upper SI joints. Tr. 212.

Plaintiff was referred by a neurosurgeon to Dr. Eric Paul Loudermilk, a pain management specialist, in June 2003. Tr. 216-17. Dr. Loudermilk performed a series of lumbar steroid injections

in June and July 2003 which were reported as helping to ease Plaintiff's pain and reported as allowing him to return to work. Tr. 191, 218. Plaintiff expressed a desire not to have back surgery at the time, for he felt that he could continue to perform his job with "conservative management of his pain." Tr. 191. By September 2003, Plaintiff told Dr. Loudermilk that he was working full-time and had just completed a physical fitness test for the police department, which included strenuous running, jumping, and lifting. Tr. 190.

After complaints about recurring pain in Plaintiff's lower back, right hip, and leg surfaced in January 2004, Dr. Loudermilk directly medicated the right L-4 nerve root using a RACZ catheter. Tr. 163-71, 189, 220. This procedure seemingly resolved the pain in Plaintiff's hip and leg, but the lower back pain persisted. Plaintiff maintained that he was unable to function at 100% effectiveness on the job, and thus, Dr. Loudermilk recommended Plaintiff begin the process of filing for disability. Tr. 187. An MRI in March 2004 showed evidence of lumbar disk bulging and spurs, but nothing that constituted a surgical problem. Tr. 185. By April 2004, Dr. Loudermilk noted that Plaintiff had reached maximum medical improvement and that while he did not think Plaintiff could return to his former position of a full duty police officer, Plaintiff was able to have a better quality of life with a reduction in pain while on pain medication. Tr. 184

Plaintiff was evaluated by a physiatrist, Dr. Carol Burnette, the following day, April 29, 2004. Tr. 179-83. After a thorough and rigorous examination, Dr. Burnette agreed that Plaintiff was at maximum medical improvement and assigned a 10 percent whole-person permanent impairment rating. Tr. 182. Dr. Burnette concurred with the permanent work restrictions imposed by Dr. Loudermilk:

> [N]o lifting greater than 20 [pounds] on a frequent basis with maximum lifting of 50 [pounds] on a rare basis, no walking or standing for more than an hour at any one time and not more than 2-3 hours of standing or walking in an entire 8 hour day. He may sit at one time for up to one hour. He should avoid repetitive bending or stooping.

Tr. 183.

In September 2004, Plaintiff told Dr. Loudermilk that his pain was both stable and under control when Plaintiff was medicated. Tr. 177. The doctor also noted that Plaintiff would be unable to return to work as a police officer and would require pain medication for an indefinite period of time. *Id*. The ability of Plaintiff to tolerate the pain he was suffering from continued through the rest of 2004 and into 2005. At the request of the Commissioner, Plaintiff was examined by Dr. Dell Sweatt in April 2005. Tr. 192-96. Dr. Sweatt concurred with the restrictions placed by Dr. Loudermilk. Dr. Sweatt agreed that Plaintiff could not return to his previous occupation; however, he believed that some type of employment was possible, so long as it avoided certain types of physical exertion and movements. Tr. 196.

During a deposition relating to Plaintiff's worker's compensation claim in May 2005, Dr. Loudermilk iterated his previous statements regarding Plaintiff's functional limitations and abilities. Tr. 224-25. The doctor also confirmed his view that while police officer may no longer be a possible vocation for Plaintiff, other jobs could be adequately performed. Tr. 236. A month later, Dr. Burnette agreed with this assessment. In explaining the restrictions derived by Dr. Loudermilk, Dr. Burnette explained that when Plaintiff was told not to sit for more than one hour, that did not mean Plaintiff was incapable of working an entire eight-hour day. Instead, Plaintiff would only have to make sure that he took short breaks every so often. Tr. 269-71. In May and July 2005, two separate

doctors[1] reviewed Plaintiff's medical records at the request of the Commissioner. Tr. 299-317. Both doctors separately came to the conclusion that Plaintiff could perform a range of "medium" work. *Id*. Dr. Robert Dameron, Jr., an orthopedic surgeon, personally examined Plaintiff in July 2005 and determined that he was unable to return to the police force in his previous capacity. Tr. 298.

At the hearing before the ALJ on September 12, 2006, vocational expert Karl Weldon testified that based on the limitations described by Dr. Burnette, a man with the age, education, and work experience of the Plaintiff could perform a myriad of jobs, including: security officer, security monitor, and packing/checking occupations. Mr. Weldon stated that there were 470,000 of these jobs nationwide with 7,600 of those in upstate South Carolina. Tr. 405-06. After taking into account the fact that Plaintiff is on narcotic medication, Mr. Weldon testified that security jobs would no longer be a possibility, because of the required drug screening, but other positions such as machine operator or clerk could also be performed by Plaintiff. Tr. 406. Mr. Weldon stated that there were 348,000 of these positions nationwide, with 4,000 in the upstate South Carolina economy. Tr. 407. The ALJ focused on the claims made by both Dr. Loudermilk and Dr. Burnette that indicated Plaintiff would be able to perform other forms of work. *Supra*, p. 5-6.

## IV. DISCUSSION

Plaintiff contends that the Magistrate Judge erred in not finding that the ALJ failed to properly take into account the testimony of Drs. Burnette and Loudermilk detailing the difficulties confronting Plaintiff should he try to re-enter the workforce. The Magistrate Judge determined that the ALJ did not ignore this testimony, but rather, interpreted it differently from what Plaintiff desired. As the Magistrate Judge previously noted, even if a conclusion separate from the one the

---

[1] Hugh Clarke, M.D. and Dale Van Slooten, M.D.

ALJ arrived at is possible based on the evidence presented, it is not the province of the judiciary to reverse the finding of the Commissioner if that finding is based on substantial evidence. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984); *Richardson*, 402 U.S. at 390; *Blalock*, 483 F.2d at 775. Plaintiff's objection is without merit.

Plaintiff asserts that the Magistrate Judge erred in failing to properly consider the testimony of Dr. Burnette. Plaintiff's Objections 1. Plaintiff maintains that Dr. Burnette testified the only employment available to the Plaintiff would be self-employment or a situation in which he could set his own hours. *Id*. Such a recommendation is tantamount to saying that Plaintiff was unemployable, because those working conditions are nearly impossible to come by. However, under cross-examination, Dr. Burnette testified that Plaintiff "potentially" could even work at the police station again, albeit in a different capacity. Tr. 285. This admission, coupled with the other statements in the record from doctors and experts who say that Plaintiff could find gainful employment, meet the ALJ's substantial evidence burden. *See supra*, p. 2. Plaintiff's objection is without merit.

Plaintiff next contends that Dr. Burnette's testimony indicated laintiff could work only for a four hour period each day. Plaintiff's Objections 2. While Dr. Burnette did agree that was one possibility, she stated that such a strict delineation was not the sole interpretation of Plaintiff's restrictions. Tr. 268-69. These other possible scenarios for time usage, including shorter breaks stretched over a longer period of the day, show that there was substantial evidence supporting the Magistrate Judge's decision. Plaintiff's objection is without merit.

## V. CONCLUSION

After reviewing the entire record, the applicable law, the briefs of counsel, the findings and

recommendations of the Magistrate Judge, and Plaintiff's objections, this court adopts the Magistrate Judge's Report and Recommendation and incorporates it herein by reference. For the reasons set out hereinabove and in the Report and Recommendation, the Commissioner's final decision of no disability is **affirmed**.

    **IT IS SO ORDERED**.

                                            s/Margaret B. Seymour
                                            United States District Judge

Columbia, South Carolina

September 29, 2008